**FOR PUBLICATION**

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------X
                                                                                :     Chapter 11

In re:                                           :

                                                        :     Case No. 12-14554 (CGM)

      Metex Mfg. Corporation,            :

                                                          :
                                          Debtor.   :

------------------------------------------------------------X

**A P P E A R A N C E S :**
REED SMITH LLP
*Attorneys for the Debtor*
599 Lexington Avenue
New York, NY 10022
Telephone:   (212) 521-0400
Facsimile:    (212) 521-5450
<u>By:</u>        Paul E. Breene, Esq.
        -and-
225 Fifth Avenue, Suite 1200
Pittsburgh, PA 15222
Telephone:   (412) 288-3114
Facsimile:    (412) 288-3063
<u>By:</u>        Paul M. Singer, Esq.

OFFICE OF THE ILLINOIS ATTORNEY GENERAL
*Counsel for the Illinois Department of Revenue*
100 W. Randolph Street
Chicago, IL 60601
Telephone:   (312) 814-4557
<u>By:</u>        James D. Newbold, Assistant Attorney General

**CECELIA G. MORRIS**
**CHIEF UNITED STATES BANKRUPTCY JUDGE**

**MEMORANDUM DECISION SUSTAINING THE DEBTOR'S OBJECTION TO
<u>PROOF OF CLAIM NO. 4</u>**

## Introduction

Before the Court is the Debtor's objection to a proof of claim filed by the Illinois Department of Revenue for unpaid taxes owed by the Debtor's predecessor-in-interest. For the reasons set forth below, the Court finds that the tax claim was discharged in 1998 by confirmation of the plan of reorganization in the predecessor's prior bankruptcy case. Even to the extent the claims were not discharged, they are barred by the applicable statute of limitations. Accordingly, the Court sustains the Debtor's objection.

## Jurisdiction

This Court has subject matter jurisdiction over this case pursuant to 28 U.S.C. § 1334(a), 28 U.S.C. § 157(a) and the Amended Standing Order of Reference signed by Chief Judge Loretta A. Preska dated January 31, 2012.  This is a "core proceeding" under 28 U.S.C. § 157(b)(2)(B) (allowance or disallowance of claims against the estate).

## Background[1]

On March 17, 2014, Metex Mfg. Corporation (the "Debtor" or "Metex") filed an objection (the "Claim Objection") to proof of claim number 4 (the "Claim") filed by the Illinois Department of Revenue ("IDOR").  *See* Cl. Obj., ECF No. 461.  IDOR filed a response ("Response") to the Claim Objection.  *See* Resp., ECF No. 483.  The Debtor filed a reply ("Reply"), and IDOR filed a sur-reply ("Sur-Reply").  *See* Reply, ECF No. 501; Sur-Reply, ECF No. 503.

The history of this case dates back to the bankruptcy proceedings of Kentile Floors, Inc. ("Kentile"), the predecessor entity of the Debtor.  Resolution of this Claim Objection requires a brief discussion of Kentile's bankruptcy case.

---

[1] Unless otherwise indicated, all citations can be found in case number 12-14554.

Page **2** of **13**

I.      **Kentile's Bankruptcy Proceedings**

According to the Debtor's disclosure statement (the "Disclosure Statement"), Kentile began business in the late 1800s as a manufacturer of residential and commercial tile. Discl. Stmt. 1, ECF No. 438.  Until the mid-1980s, Kentile used asbestos in certain of its tiles. *Id.* at 2.  Kentile conducted some of its manufacturing activities within the state of Illinois. *Id.* at 1; Reply ¶ 3.  After it discontinued the use of asbestos, Kentile experienced difficulties in maintaining sales and its business deteriorated. Discl. Stmt. 2.  As a result, Kentile filed a petition for relief under chapter 11 of the United States Bankruptcy Code in 1992.  *Id.*

IDOR filed original and amended pre-petition and administrative expense claims in Kentile's bankruptcy case for the same liability it now asserts in the Claim. *See* Resp. ¶ 7; Cl. Obj. Ex. 2.  Specifically, IDOR filed a proof of claim against Kentile for pre-petition Retailers Occupation and Use tax liabilities in the amount of $10,000 pending completion of an audit, which was later amended to $218,438, and again to $223,933. *See id.* at Exs. B–D.  IDOR also filed an administrative claim against Kentile for post-petition Retailers Occupation and Use Tax liabilities in the amount $10,000 pending completion of an audit, which was amended to $71,352, later amended again to $85,557, and finally to $94,296. *See id.* at Exs. E–H.  These claims covered the same period as the Claim now before the Court.  Kentile did not object to IDOR's claims, which consequently became allowed tax and administrative expense claims.  *See* Resp. ¶ 8; Reply ¶ 3.

In December 1998, the Bankruptcy Court confirmed a Plan of Reorganization in Kentile's 1992 chapter 11 case ("Kentile's 1998 Plan").  As part of Kentile's 1998 Plan: (i) all outstanding stock of Kentile was cancelled and new shares were issued to United Capital Corp., and (ii) Kentile's name was changed to KF Real Estate Holdings Corporation ("KF"). *See*

Kentile's 1998 Plan § 5.8.[2]  Thereafter United Capital caused KF to be merged with Metex Corporation, a subsidiary of United Capital.  KF was the survivor of the merger and its name was changed to Metex Mfg. Corporation.  *See* Discl. Stmt. 2.  Kentile's 1998 Plan provided that all asbestos claimants were entitled to pursue their asbestos-related claims solely against Kentile's insurance coverage provided by Kentile's various insurers (the "Kentile Insurers"), and enjoined holders of asbestos claims from commencing actions against Kentile and Metex.  *See* Kentile's 1998 Plan §§ 4.3, 5.5.  Kentile's 1998 Plan also provided for the payment in full of all allowed priority and administrative tax claims.  *See id.* §§ 3.1–3.2.  All allowed administrative, priority and tax claims were to be paid by the reorganized debtor (*i.e.*, Metex) from its cash flow.  *See id.* §§ 5.2–5.4.

## II.    Metex's 2012 Prepackaged Plan of Reorganization

A number of disputes arose among the Kentile Insurers and Metex in the mid-2000s.  In 2008, one of the Kentile Insurers instituted an insurance-coverage action against Metex and the other Kentile Insurers in New York State Supreme Court.  *See Nat'l Fire Ins. Co. of Hartford v. Travelers Cas. & Sur. Co.* Index No. 105522/2008 (the "State Court Action").  The parties agreed to stay the State Court Action in mid-2012 to negotiate a consensual resolution.  As part of this consensual resolution, the parties agreed Metex would solicit a prepackaged plan of reorganization in which Metex would enter into settlement agreements with the eight remaining solvent Kentile Insurers (the "Prepackaged Plan").

In June of 2012, Metex began solicitation of the Prepackaged Plan.  By the voting deadline, only 66.15% in amount of claims voted in favor of the plan, although more than 84% of those voting cast votes in support.  Accordingly, the Prepackaged Plan could not be

---

[2] Kentile's 1998 Plan is attached as Exhibit I to the Response. *See* Resp. Ex. I.

confirmed. *See* 11 U.S.C. § 1126(c) (requiring two-thirds in amount of claims to vote in favor of a plan).

### III. Metex's Bankruptcy Case and the Claim Objection

After the Prepackaged Plan failed to receive sufficient votes, Metex filed this chapter 11 case on November 9, 2012. On April 4, 2013, IDOR filed a proof of claim for the Claim in the amount of $575,131.98. *See* Cl. Obj. Ex. 1. The Claim is for sales taxes (Illinois Retailer's Occupation Tax and Illinois Use Tax) based on two audits: (1) an audit of the prepetition periods from July 1990 to November 1992 for which a tax deficiency of $173,023.31 plus penalties and interest is asserted; and (2) an audit of the post-petition period from November 1992 through September 1993 for which a tax deficiency of $58,161 plus penalties and interest is asserted. *See* Resp. ¶ 2. The Illinois Retailer's Occupation Tax imposes a tax on businesses engaged in the sale of products at retail in the state of Illinois. *See* 35 Ill. Comp. Stat. 120/2 (2014). The Illinois Use Tax imposes a tax for the privilege of using tangible personal property purchased at retail from a retailer. *See id*. at 105/3. In its proof of claim for the Claim, IDOR classified its claim as partially secured, partially priority under § 507(a)(8) of the Code, and partially general unsecured. *See* Cl. Obj. Ex. 1. IDOR claimed secured status in the amount of $142,741.68, priority status in the amount of $415,086.30, and general unsecured status in the amount of $17,304. *Id*.

On March 17, 2014, the Debtor filed its Claim Objection asserting three grounds: (1) that Kentile was not subject to either the Illinois Retailer's Occupation Tax or the Use Tax; (2) that the Claim is barred by applicable statute of limitations; and (3) that the Claim was discharged by Kentile's 1998 Plan. *See* Claim Obj. ¶¶ 20–24. In the alternative, should the Court allow the Claim, the Debtor also objects to its classification as partially secured and partially priority. *Id*.

¶¶ 25–28. After IDOR filed a Response and the Debtor filed its Reply, IDOR filed its Sur-Reply. The Sur-Reply acknowledges that the Claim is not entitled to secured status to the extent that the Debtor has no property in Illinois. *See id.* ¶ 18. IDOR additionally recognizes that it erroneously calculated the priority and unsecured portions of the Claim. *See id.* ¶¶ 25–29. IDOR now requests that the Court allow the Claim as a priority claim in the amount of $136,391.82, and as a general unsecured claim in the amount of $438,740.16. *See id.* ¶ 29.

The Claim Objection was set for hearing on May 8, 2014. Due to counsel to IDOR's inability to appear in person at the hearing, IDOR requested that the Court either decide the Claim Objection on the pleadings or alternatively continue the hearing until a later date. *See* Mot., ECF 510. As the parties concurred that the issues involved in the Claim Objection are legal in nature and do not require an evidentiary hearing, the parties agreed to submit the Claim Objection to the Court on the pleadings.

## Discussion

Section 502(a) of the Code provides that "[a] claim or interest, proof of which is filed under section 501 of this title, is deemed allowed, unless a party in interest . . . objects." 11 U.S.C. § 502(a). If a party in interest objects to a claim, § 502(b) provides that, after notice and a hearing, the court "shall determine the amount of [the] claim . . . and shall allow [the] claim in such amount, except to the extent that . . . [the] claim is unenforceable against the debtor and property of the estate under an agreement or applicable law . . . ." 11 U.S.C. § 502(b). Accordingly, if the creditor's claim is unenforceable under applicable state law, the claim is unenforceable against the debtor and should be disallowed. *See, e.g.*, *In re Hess*, 404 B.R. 747, 751 (Bankr. S.D.N.Y. 2009). For example, where a creditor's claim has been discharged through a prior bankruptcy proceeding, the claim is not enforceable against the debtor or its successors-

in-interest. *See* 11 U.S.C. § 524(a); *see also In re MCI, Inc.*, 2006 WL 544494, at *1 (Bankr. S.D.N.Y. Jan. 27, 2006). Similarly, as numerous courts have held including this Court in *Brill*, "[a] challenged claim will not be allowed by the bankruptcy court if the claim is barred by the applicable statute of limitations." *In re Brill*, 318 B.R. 49, 53 (Bankr. S.D.N.Y. 2004); *see also Hess*, 404 B.R. at 750.

Courts in the Second Circuit apply a burden shifting framework for claims objections. *See In re St. Johnsbury Trucking Co., Inc.*, 206 B.R. 318, 323 (Bankr. S.D.N.Y. 1997), *aff'd*, 221 B.R. 692 (S.D.N.Y. 1998), *aff'd*, 173 F.3d 846 (2d Cir. 1999). A properly filed proof of claim constitutes *prima facie* evidence of the claim's amount and validity. *See* Fed. R. Bankr. P. 3001(f). When a valid proof of claim is properly filed, the party in interest objecting to the claim carries the burden of putting forth evidence sufficient to refute the validity of the claim. *See St. Johnsbury Trucking*, 206 B.R. at 323. After the objector does so, the burden shifts to the claimant to establish the validity and amount of its claim by a preponderance of the evidence. *See In re Porter*, 374 B.R. 471, 480 (Bankr. D. Conn. 2007). Here, the Debtor does not dispute that IDOR properly filed a valid proof of claim for the Claim, placing the initial burden on the Debtor to refute the claim. *See* Cl. Obj. Ex. 1. For the following reasons, the Debtor has met its burden of refuting the Claim. In response, IDOR has failed to carry its resulting burden of establishing the validity and amount of the claim by a preponderance of the evidence. Accordingly, the Court sustains the Debtor's Claim Objection.

**I.     The Debtor Is Bound by Kentile's Failure to Object to the Allowance of Claims for the Same Liability in Its Prior Bankruptcy Case**

The Debtor first argues that it was not subject to either the Illinois Retailers' Occupation Tax or Illinois Use Tax. The Debtor asserts that the only business that Kentile ever conducted in the state of Illinois was the manufacture of flooring tile. Cl. Obj. ¶ 20. Accordingly, the Debtor

argues that Kentile was not subject to the Illinois Retailer's Occupation Tax: it never engaged in a retail business in the state, and is exempt from the Use Tax on equipment used in its manufacturing process. *See* 35 Ill. Comp. Stat. 120/2 (2014); *id*. at 105/3-5(18). In response, IDOR submits a copy of a sales tax return purporting to demonstrate that Kentile filed sales tax returns during the periods referenced in the Claim. *See* Resp. Ex. A. IDOR submits that this constitutes evidence that Kentile was subject to both the Retailers' Occupation Tax and the Use Tax. The tax return plainly indicates that it was submitted by "Kentile, Inc." *See id*. The Debtor argues that Kentile, Inc. and Kentile Floors, Inc. are wholly different entities. *See* Reply ¶ 2. According to the Debtor, Kentile, Inc. was the entity that purchased Kentile Floors, Inc.'s Illinois industrial property in a sale pursuant to § 363 of the Code approved by the Court during Kentile's 1992 chapter 11 case. *See id*.

The parties' arguments notwithstanding, the Court need not reach the issue of whether the tax return provided by IDOR proves that the Debtor was subject to the Retailers' Occupation Tax and the Use Tax. IDOR filed claims for the same tax liability at issue in the instant proceeding against Kentile during the 1992 proceedings. *See* Cl. Obj. Ex. 2; Resp. Exs. B–H. Kentile failed to object to the allowance of these claims. Thus, the claims were deemed allowed as against Kentile in its bankruptcy proceedings. The Debtor, as successor to Kentile, now seeks to collaterally attack the determination that those claims were allowed as against Kentile. Such a collateral attack is impermissible. *See Holly's, Inc. v. City of Kentwood (In re Holly's, Inc.)*, 172 B.R. 545, 562–68 (Bankr. W.D. Mich. 1994).

## II. IDOR's Claim was Discharged by Confirmation of Kentile's 1998 Plan

Despite the fact that IDOR had allowed claims against Kentile, the Debtor correctly asserts that those claims were discharged by confirmation of Kentile's 1998 Plan in its 1992 bankruptcy proceedings. Article 9.2 of Kentile's 1998 Plan specifically provided that

"[c]onfirmation shall discharge and release the Debtor and its Estate from any and all dischargeable and releasable Claims, debts, liens, security interests, encumbrances and interests that arose before the Confirmation Date, and any debt of a kind specified in Bankruptcy Code section 502(g), (h) or (i) . . . ." *See* Kentile's 1998 Plan § 9.2; *see also* 11 U.S.C. § 1141. The Claim on its face indicates that it arose prior to confirmation of Kentile's 1998 Plan. *See* Cl. Obj. Ex. 1. Accordingly, the Claim was discharged and must be disallowed. *See In re MCI, Inc.*, 2006 WL 544494, at *1–2 (Bankr. S.D.N.Y. Jan. 27, 2006) (holding that discharged claims are unenforceable against the debtor).

Attempting to refute this point, IDOR argues that Kentile's 1998 Plan provided for payment in full of both priority and administrative tax claims, and cannot be read as simultaneously discharging those same claims. *See* Resp. ¶¶ 15–17; *see also* Kentile's 1998 Plan §§ 3.1, 3.2 (providing for payment in full of allowed priority and administrative tax claims). IDOR's argument misconstrues the effect of confirmation under § 1141 of the Code.

"Under the Bankruptcy Code, a confirmed plan of reorganization acts like a contract that is binding on all of the parties, debtor and creditors alike." *Adelphia Recovery Trust v. Bank of Am., N.A.*, 390 B.R. 80, 88 (S.D.N.Y. 2008) (quotation omitted), *aff'd*, 379 F. App'x 10 (2d Cir. 2010). "The effect of confirmation is to discharge the entire pre-confirmation debt, replacing it with a new indebtedness as provided in the confirmed plan." *In re Penrod*, 169 B.R. 910, 916 (Bankr. N.D. Ind. 1994), *aff'd*, 50 F.3d 459 (7th Cir. 1995). Thus, following confirmation of a plan of reorganization, the reorganized debtor is obligated to make the payments to creditors that the plan requires. *See In re Jordan Mfg. Co., Inc.*, 138 B.R. 30, 38 (Bankr. C.D. Ill. 1992) (quotations and citations omitted). The reorganized debtor's failure to fulfill its obligations under the plan does not revive the original, prepetition debt. *See In re Stratton Grp., Ltd.*, 12

B.R. 471, 474 (Bankr. S.D.N.Y. 1981). "Instead, the creditor's remedy is to enforce the obligations contained in the confirmed plan." *Jordan*, 138 B.R. at 38 (quotations omitted); *see also In re Benjamin Coal Co.*, 978 F.2d 823, 827 (3d Cir. 1992) ("[E]ach claimant's remedies for any future nonpayment of claims acknowledged in the plan are limited to the usual remedies for the type of claim granted by the plan's provisions."); *In re Xofox Indus., Ltd.*, 241 B.R. 541, 543 (Bankr. E.D. Mich. 1999) ("It is black-letter law that if a reorganized debtor defaults on plan payments to an unsecured creditor, the creditor can pursue the debtor for the restructured debt under the plan."). Accordingly, "[a] post confirmation default should be treated as any other contractual default under state law." *Xofox*, 241 B.R. at 543 (quotation omitted).

By confirmation of Kentile's 1998 Plan, IDOR's tax claims were replaced by the Metex's obligation as the successor entity to Kentile to pay those claims in full as provided by Kentile's 1998 Plan. *See* Kentile's 1998 Plan §§ 3.1–3.2. All allowed administrative, priority and tax claims were to be paid by the reorganized debtor (*i.e.*, Metex) from its cash flow. *See id*. §§ 5.2–5.4. To the extent Metex failed to do so, it breached its contractual obligations under Kentile's 1998 Plan. IDOR's remedy is to seek to enforce the obligations in the plan. *See Jordan*, 138 B.R. at 38. It cannot seek to revive its original prepetition tax claims as it is now attempting to do. *See Stratton,* 12 B.R. at 474. Those debts were discharged by confirmation of Kentile's 1998 Plan. *See Penrod*, 169 B.R. at 916.

### III. IDOR's Claim Is Barred Under the Applicable Statute of Limitations in Both Illinois and New York

#### A. If Interpreted as a Claim Against Metex for Post-Confirmation Default on Its Obligations Under the 1998 Plan, IDOR's Claim Is Time Barred

IDOR's claim against Metex for defaulting on its obligations under Kentile's 1998 Plan is properly viewed as a breach of contract claim. *See Xofox*, 241 B.R. at 543 (finding that a "post

confirmation default should be treated as any other contractual default under state law."). Kentile's 1998 Plan specifically provides for New York law to apply. *See* Kentile's 1998 Plan § 12.10. Under New York Law, "an action upon a contractual obligation or liability, express or implied" must be commenced within six years from the date the claim arose. N.Y. C.P.L.R. § 213(2). This chapter 11 case was filed on November 9, 2012, more than 13 years after Metex was required to make payments due under Kentile's 1998 Plan. *See* Kentile's 1998 Plan §§ 3.1, 3.2. Thus, IDOR's claim against Metex for its default under Kentile's 1998 Plan is time-barred under New York law.

### B. Even if Viewed as a Prepetition Tax Claim, IDOR's Claim Is Time Barred Under Illinois Law

Even viewing the Claim as a tax claim rather than a breach of contract claim, the Claim is still time-barred. Neither party disputes that suits on collection of tax revenue for the Illinois Retailer's Occupation Tax and Illinois Use Tax are subject to six-year statutes of limitation under Illinois law. *See* 35 Ill. Comp. Stat. 120/5, 105/12 (2014); *see also* Cl. Obj. ¶ 21; Resp. ¶¶ 11–14. IDOR's Claim was at least 18 years old as of the commencement date. *See* Cl. Obj. ¶ 22. Accordingly, IDOR is time barred from bringing suit against the Debtor to recover the Claim.

IDOR nonetheless argues that its Claim is not time barred as its "options in collecting sales taxes are not limited to the filing of a law suit." Resp. ¶ 12. IDOR has the ability under Illinois law to assert an administrative levy "upon property and rights to property (whether real or personal, tangible or intangible) of the taxpayer" in order to enforce the tax liability of the taxpayer. 35 Ill. Comp. Stat. 120/5f (2014). This particular statute provides its own statute of limitations: "No proceedings for a levy under this Section may be commenced more than 20 years after the latest date for filing of the notice of lien under Section 5b of this Act, without regard to whether such notice was actually filed." *Id.* The latest date for filing a notice of lien

under 35 Ill. Comp. Stat.120/5b is three years after the tax is finalized. *See id.* at 120/5a, b, f. As the taxes at issue were finalized on June 14, 1994, IDOR's right to levy will not be time-barred until June 14, 2017.

These arguments notwithstanding, IDOR's right to levy is unavailable under the current circumstances as Metex owns no property or interest in property in the state of Illinois, nor did it at the time of the commencement of this bankruptcy case. *See* Decl. of Anthony J. Miceli ¶¶ 2–3.[3] The Court agrees with the Debtor that "[b]ecause the six year limitations period on IDOR's right to bring suit against the Debtor has expired under Illinois law and there is no property that IDOR can levy upon to recover on its Claim, it would be inequitable to allow IDOR's Claim to survive." Reply ¶ 13. Currently, IDOR has no means to recover on its Claims against Metex. As discussed above, IDOR's Claim is properly viewed as breach of contract claim to the extent Metex defaulted on its obligations under Kentile's 1998 Plan. That claim is time-barred. Additionally, to the extent that IDOR conceivably still has prepetition claims for Retailers' Occupation Taxes and Use Taxes, it is time-barred from asserting suit to collect, and Metex has no property in Illinois against which IDOR can levy.

In sum, IDOR is currently time-barred or otherwise unable to collect on the Claim, whether the Claim is viewed as a tax claim or a breach of contract claim for the Debtor's default under Kentile's 1998 Plan. If the Court were to allow the Claim, upon confirmation of Metex's plan of reorganization, the claim would be replaced "with a new indebtedness as provided in the confirmed plan." *Penrod*, 169 B.R. at 916. This new indebtedness would essentially revive the currently time-barred claim and subject it to a new statute of limitations (*i.e.*, for breach of contract under whatever state law is to govern Metex's plan). Such would be an inequitable result. *See In re Momentum Mfg. Corp.*, 25 F.3d 1132, 1136 (2d Cir. 1994) ("It is well settled

---

[3] The Miceli Declaration is attached as Exhibit 1 to the Reply. *See* Reply Ex. 1.

that bankruptcy courts are courts of equity, empowered to invoke equitable principles to achieve fairness and justice in the reorganization process.").

As the Court is disallowing and expunging the Claim, it need not address whether the claim is properly classified as partially secured, partially priority unsecured, and partially general unsecured.

## **Conclusion**

For the foregoing reasons, the Court sustains the Claim Objection, and disallows and expunges the Claim in its entirety.  The Debtor is directed to submit an order consistent with this opinion.

Dated: Poughkeepsie, New York
      June 13, 2014                          ___/s/ Cecelia G. Morris_____
                                            CECELIA G. MORRIS
                                            CHIEF UNITED STATES BANKRUPTCY JUDGE